UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMY STARR and ANDREW PHELAN, individually and on behalf of a class of persons similarly situated, | ) ) ) | |
| | ) | No. 12 C 04416 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| CHICAGO CUT STEAKHOUSE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Amy Starr and Andrew Phelan filed this proposed class-action against their former employer, Chicago Cut Steakhouse, LLC, under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1 *et seq.*[1] R. 26, First Am. Compl. ¶ 2. Plaintiffs allege that Chicago Cut improperly administered its tip pool by retaining a portion of the tip-pool proceeds for itself. *Id.* ¶¶ 14-19. Plaintiffs have moved to certify a class as to their state-law tip-pool claims (Counts 1 and 2).[2] R. 42, Mot. Class Cert. Plaintiffs

---

[1] The Court has subject matter jurisdiction over the federal-law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the Illinois state-law claims under 28 U.S.C. § 1367. Citation to the docket is "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "PSOF" (for Plaintiffs' Statement of Facts) [R. 98]; "DSOF" (for Chicago Cut's Statement of Additional Facts) [R. 107 at 11-13]; "Def.'s Resp. PSOF" (for Chicago Cut's response to Plaintiffs' Statement of Facts) [R. 107 at 1-10]; and "Pls.' Resp. DSOF" (for Plaintiffs' response to Chicago Cut's Statement of Facts) [R. 109].

[2] Plaintiffs also moved to certify a class for their state-law overtime claim (Count 4). Mot. Class Cert. at 1. Defendant successfully moved for summary judgment on that Count.

have also moved for summary judgment on all of their tip-pool claims (Counts 1, 2, and 3). R. 96, Pls.' Mot. Summ. J. For the reasons discussed below, Plaintiffs' motion for summary judgment is denied, and their motion for class certification is granted.

## I. Background

Chicago Cut Steakhouse is, as its name says, a steakhouse in Chicago, Illinois. PSOF ¶ 1. Chicago Cut treats many of its employees—servers, runners, barbacks, bartenders, and busboys—as "tipped employees" under the tip-credit provisions of the FLSA and IMWL. *Id.* ¶ 3; R. 106, Def.'s Mot. Summ. J. Resp. Br. at 6. Under these provisions, Chicago Cut is allowed to pay tipped employees 40 percent less than the prevailing minimum wage if the employees are able to make up the difference in tips. R. 44, Pls.' Class Cert. Br. at 3; *see also* 29 U.S.C. § 203(m); 820 ILCS § 105/4(c). The difference between the reduced wage and the minimum wage is called the "tip credit." Pls.' Class Cert. Br. at 3. To take the tip credit, an employer generally is not allowed to keep any of the tips received by its employees. *See* 29 U.S.C. § 203(m); 820 ILCS § 105/4(c).

Chicago Cut operates a tip pool on behalf of its tipped employees. PSOF ¶ 15. Servers in the main dining room contribute six percent of their net sales to the tip pool, which is then distributed to runners, bussers, and bartenders. *Id.* ¶ 16; *see also* Def.'s Resp. PSOF ¶ 16. For private dining events, the tip pool operates slightly differently. Chicago Cut charges a twenty-percent service charge to private dining

---

*See* R. 115, Sept. 23, 2014 Order. Plaintiffs' motion to certify a class as to the state-law overtime claim is therefore denied as moot.

clients. *See* Def.'s Mot. Summ. J. Resp. Br. at 6; R. 61, Pls.' Position Paper at 3. This service charge is divided among the servers who worked the private event, the tip pool, and a private dining event coordinator. *See* Pls.' Position Paper at 3; R. 60, Def.'s Position Paper at 1. Chicago Cut also withholds a portion of this service charge to cover credit card processing fees. Def.'s Mot. Summ. J. Resp. Br. at 7. Plaintiffs Amy Starr and Andrew Phelan, both of whom worked as bartenders at Chicago Cut, argue on behalf of themselves and the proposed class that Chicago Cut improperly operated the tip pool (1) by keeping a portion of the tip-pool proceeds for itself and (2) by paying tip-pool proceeds to ineligible employees. First Am. Compl. ¶¶ 14-19; R. 97, Pls.' Mot. Summ. J. Br. at 6-9; R. 108, Pls.' Mot. Summ. J. Reply Br. at 9-10.

Plaintiffs allege that this improper tip pool violates the tip credit provisions of the FLSA and IMWL because tipped employees did not receive the full measure of wages that they are due. First Am. Compl. ¶¶ 49-57, 68-77. Plaintiffs claim the improper tip pool also violates the IWPCA because, in withholding tip-pool funds, Chicago Cut paid tipped employees less than the amount agreed to in their employment agreements with Chicago Cut. *Id.* ¶¶ 58-67. Plaintiffs have moved for class certification on the IMWL and IWPCA tip-pool claims. Mot. Class Cert. Plaintiffs have also moved for summary judgment on liability for the FLSA, IMWL, and IWPCA tip-pool claims, arguing that the undisputed evidence in the record shows that Chicago Cut improperly operated the private dining tip pool by retaining a portion of the tip pool for credit card fees and paying the private dining event

coordinator from the tip-pool proceeds. Pls.' Mot. Summ. J. Br. at 6-9; Pls.' Mot. Summ. J. Reply Br. at 9-10.

## II. Plaintiffs' Motion for Summary Judgment[3]

### A. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law.

---

[3]As discussed below, class certification is supposed to be decided before resolving merits issues. Fed. R. Civ. P. 23(c)(1). Both parties, however, chose to exchange summary judgment briefs before the class-certification decision. In certain circumstances, courts may reach a merits decision before a certification decision if the parties are willing to forgo the preclusive effect of a potential victory. *See Wiesmuller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) (citing *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941-42 (7th Cir. 1995)). Had the Court decided to grant Plaintiffs' motion for summary judgment, it would have asked Plaintiffs whether it preferred to decide class certification first to gain the efficiency of a class action. Given the denial of Plaintiffs' motion, however, there was little to be gained in certifying the class first.

4

*Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## B. Analysis

Ordinarily, an employer may only take the tip credit under the FLSA and IMWL if each tipped employee retains all of his tips. *See* 29 U.S.C. § 203(m); 820 ILCS § 105/4(c).[4] This restriction does not apply, however, if the tipped employees are participating in a valid tip pool. *See* 29 U.S.C. § 203(m); 820 ILCS § 105/4(c). In a tip pool, a portion of the tipped employees' earned tips are redistributed to other employees, such as bussers, bartenders, and food runners. To be valid under the FLSA and IMWL, the tip pool must only include employees who "customarily and regularly receive tips," and the employer "may not retain any of the employees' tips for any other purpose." 29 C.F.R. § 531.54; *see also Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 380-81 (N.D. Ill. 2011); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 652-53 (N.D. Ill. 2007). If an employer improperly operates a tip pool, the employer cannot take the tip credit under either the FLSA or the IMWL. 29 U.S.C. § 203(m); *Williams-Green*, 277 F.R.D. at 379.

---

[4]The tip-credit provisions of the FLSA and IMWL are coextensive, and courts frequently use the same analysis for both statutes. *See, e.g., Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 378 (N.D. Ill. 2011) ("Tip credits are treated identically under both the Illinois Minimum Wage [Law] and the federal Fair Labor Standards Act."); *see also Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 307 (N.D. Ill. 2010); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 650 (N.D. Ill. 2007).

In their motion for summary judgment, Plaintiffs argue that Chicago Cut is not entitled to the tip credit under the FLSA and IMWL because it cannot show that the tip pool it operated was valid. Pls.' Mot. Summ. J. Br. at 6. Based on what Plaintiffs say are undisputed facts in the now-closed evidentiary record,[5] Plaintiffs contend that Chicago Cut cannot account for "shortfalls between the amount of tips Chicago Cut collected as compared to the amount of tips it distributed to tipped employees" in the tips collected from its private dining events.[6] *Id.* at 8. Plaintiffs claim that the private dining tip pool was improper under the FLSA and IMWL for two reasons: (1) the tips collected from private dining servers were distributed to the private dining event coordinator, who is not eligible (according to Plaintiffs) to

---

[5]Chicago Cut attached a declaration from one of its managing partners, David Flom, to its response to Plaintiffs' summary judgment motion. *See* R. 107-1, Def.'s Exh. A, Flom Decl. Plaintiffs ask the Court to disregard this declaration because it came after the close of discovery. Pls.' Mot. Summ. J. Reply Br. at 4-5. Because the record evidence cited by both sides illustrates that there is a genuine issue of material fact as to the Plaintiffs' tip-pool claims irrespective of the Flom declaration, the Court does not need to consider the declaration in resolving Plaintiffs' motion.

[6]Although Plaintiffs noted this issue briefly in their position paper, neither party has squarely addressed whether the service charges assessed on private dining events are, in fact, tips. Under the FLSA (and, consequently, the IMWL), a tip is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52; *see also Reich v. ABC/York-Estes Corp.*, No. 91 C 6265, 1997 WL 264379, at *4-5 (N.D. Ill. May 12, 1997). By definition, a tip is *discretionary*. FLSA regulations distinguish this from a "service charge," which is "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment." 29 C.F.R. § 531.55(a). A mandatory service charge is *not* a tip, and cannot be used to satisfy the tip-credit provisions of the FLSA. *Id.* In this case, both parties seem content to treat the twenty-percent private dining fee as a tip. Ordinarily, a party's characterization of a fee or charge would not control its FLSA treatment, but for purposes of this litigation—where both sides are treating the fee as a tip—the Court will decide the pending motion based on the parties' understanding of the service charge as a tip.

participate in the tip pool[7]; and (2) credit card processing fees were deducted from the private dining tip-pool contributions. *Id.* at 8-10.

The IWPCA claim hinges on the FLSA and IMWL tip-pool claims. Under the IWPCA, an employer is liable if it fails to pay its employees the wages they have earned under their employment agreements. *See Miller v. Kiefer Specialty Flooring, Inc.*, 739 N.E.2d 982, 986 (Ill. App. Ct. 2000). Plaintiffs claim that all of the tipped employees had an agreement with Chicago Cut that they would receive a portion of the tip pool proceeds. Pls.' Mot. Summ. J. Br. at 14-15. So if Chicago Cut did not properly pay-out the full amount of tip-pool proceeds, Plaintiffs would not have been paid their full measure of wages under their employment agreements and would be entitled to relief under IWPCA. *Id.*

Plaintiffs believe that because Chicago Cut cannot show that it operated the tip pool properly, summary judgment should be granted as to the tip-pool claims under the FLSA, IMWL, and IWPCA. As discussed below, however, the record evidence cited by both parties demonstrates that there are genuine issues of material fact that preclude summary judgment on Plaintiffs' tip-pool claims.

### 1. Private Dining Event Coordinator

The parties agree that the twenty-percent private dining service charge is distributed to the servers who worked the private event, the tip pool, and a private

---

[7]Despite various arguments regarding the private dining event coordinator's participation in the tip pool, *see* R. 52, Pls.' Class Cert. Reply Br. at 2; Pls.' Mot. Summ. J. Br. at 8-9; Pls.' Position Paper; Pls.' Mot. Summ. J. Reply Br. at 9, Plaintiffs state in their reply brief that their "motion is not premised on a theory that the private event coordinator is not allowed to receive tip pool proceeds." Pls.' Mot. Summ. J. Reply Br. at 9. It is unclear whether Plaintiffs have entirely given up this theory of liability, but given the arguments in Plaintiffs' position paper and summary judgment briefs, the Court will address the issue.

dining event coordinator, but the parties disagree as to precisely how this occurs. *See* Pls.' Position Paper; Def.'s Position Paper. Chicago Cut contends that two percentage points out of the twenty-percent service charge[8] goes directly to the private dining event coordinator, and the remaining eighteen percent goes to the servers. Def.'s Position Paper at 1. The servers then contribute three percent of the net sales to the tip pool and keep the remaining fifteen percent. *Id.* In support of this version of events, Chicago Cut points to the private dining service agreement, which states that the twenty-percent fee "consist[s] of 18% banquet gratuity, which will be distributed to the wait staff assigned to your function, [and] 2% administrative fee to cover the expenses for planning and hosting your function." R. 107-1, Exh. A, Private Dining Agreement.[9] According to Chicago Cut, the administrative fee is not a tip, it is remitted directly to the private dining coordinator in its entirety, and it is never a part of the tip pool. DSOF ¶ 1.

Plaintiffs allege that the servers actually contribute five percentage points to the tip pool (a quarter of the twenty-percent fee), and two percent of the tip-pool amount then goes to the private dining event coordinator (thus supposedly diverting tip-pool proceeds to the private dining event coordinator). Pls.' Mot. Summ. J. Reply Br. at 9. Plaintiffs argue that Chicago Cut's daily cash report demonstrates that the

---

[8] To be clear: the reference to two percent is two percent of what the client is charged for the private dining event, not merely two percent of the twenty percent service charge.

[9] Although the Private Dining Agreement is attached as an exhibit to the Flom declaration, which the Court is not considering, Plaintiffs do not seem to dispute the exhibit's authenticity or object to its use in resolving the summary judgment motion. *See* Pls.' Resp. DSOF ¶ 1 (stating that "the Private Dining Agreement speaks for itself"); *see also* Pls.' Mot. Summ. J. Reply Br. at 4 (objecting to the Flom declaration for introducing new information about the credit card processing fees). Nor is there any reason to believe that the exhibit was not timely produced during discovery.

private dining event coordinator was paid from the tip-pool proceeds collected from private dining servers. Pls.' Resp. DSOF ¶ 1. Looking at the daily cash reports in isolation, it is understandable why Plaintiffs reached this conclusion. Typically, the amount that a server contributes to the tip pool on a particular day is listed in the "tip share" column on the daily cash report. *See* R. 47, Def.'s Class Cert. Resp. Br. at 4; *see also* R. 44-5, Pls.' Exh. 5, Daily Cash and Tipshare Reports.[10] When there is a private dining event, the amount in the "tip share" column is five percent of the net sales, or a quarter of the twenty-percent fee. Def.'s Class Cert. Resp. Br. at 4; Pls.' Exh. 5, Daily Cash and Tipshare Reports. The administrative fee for the private dining event coordinator is then deducted from that amount in another entry on the daily cash report marked "to house." Def.'s Class Cert. Resp. Br. at 4; Pls.' Exh. 5, Daily Cash and Tipshare Reports

Chicago Cut might have inelegantly accounted for the two-percent fee in the restaurant's daily cash report, but that is not sufficient to show that, as a matter of law, the private dining coordinator participated in the tip pool. At a minimum, the record evidence demonstrates that there is a genuine dispute of fact as to how the administrative fee is distributed. Although the daily cash reports support Plaintiffs' version of events, there is another record maintained by Chicago Cut that is more specific to the tip pool. The "daily tipshare reports," coupled with the private dining

---

[10]In the motion for summary judgment briefs and the Local Rule 56.1 Statements of Fact, both parties frequently reference exhibits attached to the class certification briefing and previous motion for summary judgment. In particular, both parties discuss the daily cash reports and tipshare reports contained in Exhibit 5 to Plaintiffs' motion for class certification. *See, e.g.*, Pls.' Mot. Summ. J. Br. at 8; Def.'s Mot. Summ. J. Resp. Br. at 14. The Court will therefore consider these documents in evaluating the motion for summary judgment.

agreement, contradict Plaintiffs' version. The Private Dining Agreement states that the two-percent administrative fee goes directly to the private dining event coordinator and is not a tip. Def.'s Exh. A, Private Dining Agreement at 1 ("The 2% charge will be remitted in its entirety to our private events staff (no management personnel) and does not represent a tip, gratuity or service charge for the wait staff, service employees or bartenders."). The daily tipshare reports reinforce the statement in the Private Dining Agreement that the administrative fee is completely divorced from the tip pool. Each tipshare report explains how the total tip-pool proceeds were distributed each day, detailing the precise amounts distributed to each bartender, food runner, and busser. Def.'s Class Cert. Resp. Br. at 4. Chicago Cut's tipshare reports do *not* include the two-percent fee allocated "to house" in the total tip-pool amount, nor do they show any distribution of tip-pool proceeds to the private dining event coordinator. *See* Pls.' Exh. 5, Daily Cash and Tipshare Reports. Taken together, the Private Dining Agreement and the daily tipshare reports show that the administrative fee is never considered part of the tip pool, and instead is separately remitted to the private dining event coordinator.

Drawing all reasonable inferences in Chicago Cut's favor, therefore, it is certainly possible to conclude that the two-percent service charge is remitted directly to the private dining event coordinator and is never a part of the tip pool. Although the daily cash reports may be some evidence that the administrative fee and the tip-pool proceeds are intermingled, it is not sufficient to support summary judgment on this issue.

## 2. Credit Card Fees

Plaintiffs' second basis for challenging the operation of the tip pool is Chicago Cut's deduction of credit card processing fees. Under the FLSA and IMWL, employers may deduct credit card service charges from employees' tips. *Gillis v. Twenty Three East Adams Street Corp.*, No. 04 C 4012, 2006 WL 573905, at *2 (N.D. Ill. Mar. 6, 2006) (citing *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 552-53 (6th Cir. 1999)). To demonstrate that those deductions are valid, the employer must show that, "*in the aggregate*, the amounts collected from its employees, over a definable time period, have reasonably reimbursed [the employer] for no more than its total expenditures associated with credit card tip collections." *Id.* (quoting *Myers*, 192 F.3d at 554) (emphasis in original).

In response to the Court's request for position papers explaining the private-dining tip-pool pay-out, Chicago Cut explained that credit card processing fees were deducted from the amount paid to private dining servers. Def.'s Position Paper at 3. This revelation came after the close of discovery, and Chicago Cut had not taken or produced any discovery on how the credit card processing fees were calculated. *See* R. 83, Dec. 12, 2013 Order. Based on this lack of record evidence, Plaintiffs argue that Chicago Cut is unable to establish that that the deducted credit card processing fees were no more than the amount necessary to reasonably reimburse it for total expenditures associated with credit card tip collections. Pls.' Mot. Summ. J. Reply Br. at 3, 5-6. According to Plaintiffs, if Chicago Cut cannot account for these credit card processing fees, it cannot show that the tip-proceeds that it collected

11

were distributed in their entirety to the employees. Pls.' Mot. Summ. J. Br. at 7-11; Pls.' Mot. Summ. J. Reply Br. at 3-4.

Despite the lack of evidence regarding the propriety of the credit card processing fees, Plaintiffs are not entitled to summary judgment on this issue. Plaintiffs' claims involve Chicago Cut's improper handling of the *tip pool*; they allege that Chicago Cut did not distribute the entire amount of tip-pool proceeds to the tip-pool eligible employees. *See* First Am. Compl. ¶¶ 14-19, 49-77; Pls.' Mot. Summ. J. Br. at 6 ("Chicago Cut has the burden of proving that it did not improperly retain any portion of the Tip Pool proceeds. Chicago Cut has not met and cannot meet this burden."). Drawing all reasonable inferences from the record evidence in Chicago Cut's favor, a jury could find that the credit card processing fees were deducted from the tips of the private dining *servers*, rather than the *tip-pool* proceeds. Although deducting credit card processing fees from servers' tips in excess of Chicago Cut's total expenditures associated with credit card tip collections might be a FLSA or IMWL violation, it is not the violation about which Plaintiffs' complain in this lawsuit.

The daily cash reports illustrate this point. As discussed above, a twenty-percent service charge is assessed on private dining clients. Two percent goes to the private dining event coordinator, three percent goes to the tip pool, and fifteen percent should go to the servers who worked the event. *See* Def.'s Position Paper; Pls.' Position Paper at 5 (arguing that five percent of the net sales goes to the tip pool, including the two-percent fee to the private dining coordinator). On days when

12

a private event occurred, the daily cash reports consistently show that the tip pool received three percent of the net sales from the private event. *See* Pls.' Exh. 5, Daily Cash and Tipshare Reports. The tip pool thus receives the entire three-percent amount that it was due from the service charge; there are no deductions for any credit card processing fees.

For example, there was a private dining event at Chicago Cut on September 13, 2011.[11] The net sales from the private event were $8,146. Pls.' Exh. 5, Daily Cash and Tipshare Reports at CCS 005189 (showing net sales of $2,036.50 for four private dining servers, totaling $8,146). The daily cash report shows each server paying $101.75 into the tipshare column, for a total of $407, with $163 going "to house" for the private dining event coordinator. *Id.* That leaves $244 for the tip pool; $244 is three percent of the $8,146 net sales (excusing $0.38 for rounding). The four servers who worked the event should have received $1,221.90—fifteen percent of the net sales. That comes to $305.48 for each of the four servers. According to the daily cash report, however, each server only received $294.15. *Id.* Chicago Cut explained that this discrepancy arose from deducting $45.62 in credit card processing fees from the servers' fifteen percent. Def.'s Position Paper at 3. The credit card processing fees, therefore, came from the private dining *servers'* tips, not the tip-pool proceeds. The tip pool still received the three percent that it was due. The other daily cash reports show the same pattern. *See* Pls.' Exh. 5, Daily Cash and Tipshare Reports.

---

[11]This event is the example used by both parties in their position papers. *See* Def.'s Position Paper; Pls.' Position Paper.

Even under Plaintiffs' version of the tip pool's operation (over which there is a genuine issue)— that five percent of the private dining service charge goes to the tip pool (of which the two-percent fee is then diverted to the private dining event coordinator)—the daily cash reports still support the reasonable inference that the credit card processing fees are deducted from the servers' tips, not the tip-pool proceeds. Plaintiffs state that five percent of the private dining service fee goes to the tip pool. *See* Pls.' Position Paper at 5. On September 13, 2011, $407 was paid to the tip pool (of which $163 went "to house"). The $407 that went to the tip pool is five percent of the $8,146 in net sales (again, excusing $0.30 for rounding). So the entire tip-pool amount was distributed to the tip pool.[12] Based on the daily cash reports, a reasonable jury could conclude that the discrepancy between the tips owed and the tips paid arise from the *servers'* tips, not the *tip-pool* proceeds.

Plaintiffs also argue that Chicago Cut improperly deducts the credit card processing fee twice. Pls.' Mot. Summ. J. Br. at 12. According to Plaintiffs, the record shows that the restaurant's point-of-sale system automatically deducts the credit card processing fees when calculating the net sales of a particular transaction. *Id.* at 4-5; PSOF ¶ 25. If Chicago Cut's post-discovery argument that credit card processing fees are also deducted from private dining servers' tips is true, Plaintiffs conclude that Chicago Cut has improperly deducted the processing fee twice: once by the point-of-sale system in calculating net sales, and once more when calculating the tips to go to the private dining server. Pls.' Mot. Summ. J. Br.

---

[12]In their motion for summary judgment, Plaintiffs do not challenge the propriety of the percentage directed to the tip pool.

at 11-12. For its part, Chicago Cut argues that the point-of-sale service merely *calculates* the credit card processing fees; it does not deduct them. Def.'s Resp. PSOF ¶¶ 24-25. Even if the credit card processing fees were deducted twice, however, a reasonable juror could find that this double deduction affects only the private dining *servers*, not the private dining tip pool. Plaintiffs do not complain that net sales—from which they claim credit card processing fees are already deducted—is an inappropriate basis for calculating the amount to go to the tip pool. Their complaint is that the *second* deduction of credit card processing fees is improper, as it demonstrates that Chicago Cut is keeping a portion of the tips for itself in excess of the allowable fees. *See* Pls.' Mot. Summ. J. Br. at 12 ("Chicago Cut improperly retained Tip Pool proceeds for itself, because its Point of Sale System had already deducted the relevant credit card processing fees from the servers' gross sales."). But as discussed above, the record evidence reflects that the so-called second deduction (if it happens at all) is taken only from the tips of the private dining *servers*, not the tip-pool proceeds. Although this might be an FLSA and IMWL violation, it is not the violation about which Plaintiffs complain.

Based on the record evidence, a reasonable juror could conclude that Chicago Cut's operation of the tip pool was proper (even if there is evidence of different FLSA and IMWL violations not at issue in Plaintiffs' complaint). Plaintiffs' motion for summary judgment on their FLSA, IMWL, and IWPCA tip-pool claims—all of which were premised upon Chicago Cut's supposed inability to demonstrate that the tip pool was properly operated—is therefore denied.

### III. Class Certification

### A. Legal Standard

Courts usually should decide the question of class certification before turning to the merits of a given action.[13] *See Wiesmueller*, 513 F.3d at 787. To be entitled to class certification, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one of the subsections of Rule 23(b). *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012) (citation omitted). Here, Plaintiffs seek money damages, *see* First Am. Compl. ¶¶ 57, 67, so they must meet the requirements of Rule 23(b)(3). "Failure to meet any of the Rule's requirements precludes class certification." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009) (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)) (internal quotation marks omitted).

"A class may be certified only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). The named

---

[13]As noted above, partial summary judgment was previously granted to Chicago Cut against Plaintiffs' overtime claims (Counts 4 and 5). *See* Sept. 23, 2014 Order. Although class certification should typically be decided before turning to the merits of a case, Fed. R. Civ. P. 23(c)(1), both parties knowingly opted to exchange summary judgment motions in advance of the Court's ruling on certification. Sept. 23, 2014 Order at 8 n.4; *see also Wiesmueller*, 513 F.3d at 787 (citing *Cowen*, 70 F.3d at, 941-42) (holding that there are situations in which a district court may rule on a summary judgment motion before ruling on class certification). The decision granting Chicago Cut's summary judgment motion on the overtime claims, therefore, only affected the rights of the named Plaintiffs. Sept. 23, 2014 Order at 8 n.4; *Wiesmueller*, 514 F.3d at 787.

plaintiff bears the burden of showing by a preponderance of the evidence that all of Rule 23's requirements are satisfied. See *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Messner*, 669 F.3d at 811. The Court "must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Dukes*, 131 S. Ct. at 2551 (recognizing that class-certification analysis "[f]requently … will entail some overlap with the merits of the plaintiff's underlying claim"). In the end, the Court has "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) (internal quotation marks and citation omitted).

## B. Analysis

Plaintiffs advance class-action claims based on alleged violations of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* Pls.' Class Cert. Br. at 8. Plaintiffs have proposed two classes under Federal Rule 23(b)(3):

(1) All persons who worked for Defendant in Illinois as hourly employees at any time between September 20, 2010 and the present who participated in one or more tip pools operated by Defendant, and who were paid pursuant to the tip credit (IMWL class).

(2) All persons who worked for Defendant in Illinois as hourly employees at any time between September 20, 2010 and the present who participated in one or more tip pools operated by Defendant (IWPCA class).

*Id.* To be certified, these classes must meet the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, as well as the Rule 23(b) requirements of predominance and superiority. The Court will address each of these requirements in turn.

### 1. Numerosity

Plaintiffs have demonstrated that their proposed classes are sufficiently numerous for class treatment. To meet the numerosity requirement, a plaintiff must show that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). Here, Plaintiffs have presented evidence that the proposed classes contain at least eighty tipped employees. *See* R. 44-1, Flom Dep. at 48:8-10 (stating that Chicago Cut has approximately 200 employees); R. 44-9, Payroll Register Report (showing that, in March 2012, there were 94 "active" employees in the "staff" group identified as having "tips owed" and/or "tips paid"); Pls.' Class Cert. Br. at 10 (stating that various payroll register reports demonstrate between 80 and 120 putative class members during any given two-week pay period). Joinder of eighty or more plaintiffs would certainly be impracticable. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926-27 (7th Cir. 2006) ("Sometimes 'even' 40 plaintiffs would be unmanageable); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (holding that a proposed class of 40 was "a sufficiently large group to

satisfy Rule 23(a)"); *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008) ("Generally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied."). Plaintiffs' proposed classes satisfy the numerosity requirement of Rule 23(a).

## 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Chicago Cut argues that Plaintiffs are unable to satisfy this commonality requirement. Def.'s Class Cert. Resp. Br. at 9. Although Chicago Cut's brief in opposition to class certification focuses primarily on the merits of the underlying dispute, Chicago Cut does seem to make two arguments against a finding of commonality: (1) Plaintiffs cannot demonstrate commonality because they have only "raise[d] some common questions … which do not generate common answers"; and (2) Plaintiffs cannot demonstrate "that the employees of Chicago Cut were ever actually paid less than the minimum wage." *Id.* Neither argument is persuasive.

To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury." *Dukes*, 131 S. Ct. at 2551. Commonality requires that all of the class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*. In *Dukes*, the Supreme Court concluded that what is most relevant to class certification "is not the raising of common questions—even in droves—but, rather the capacity of a

classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (internal quotation marks and citation omitted).

Plaintiffs' proposed classes meet this commonality requirement because the tip-pool claims present a common question that will generate a common answer. Plaintiffs allege that Chicago Cut improperly operated the tip pool by retaining a portion of the tip-pool proceeds and by including ineligible employees in the tip pool. *See* First Am. Compl. ¶¶ 14-19; Pls.' Class Cert. Br. If Plaintiffs' allegations are correct, Chicago Cut was not entitled to take the tip credit for employees participating in the improper tip pool under the IMWL, and it underpaid each employee participating in the tip pool in violation of the IWPCA. *See, e.g., Williams-Green*, 277 F.R.D. at 382. So, if the tip pool was improper, Chicago Cut will be liable to *all* employees who participated in the improper tip pool. If, however, Chicago Cut properly operated the tip pool, *no* participating employee will have a claim. Unlike *Dukes*, in which dozens of discrete decisions by individual managers scattered across the country contributed to the putative class's allegations, 131 S. Ct. at 2554-56, there are no individualized inquiries here, particularly on liability, that would prevent productive classwide litigation. Chicago Cut operated one tip pool, and it has not argued that the tip pool operated differently for different employees. The classwide claims thus rest on a common question—did Chicago Cut properly administer the tip pool—and more importantly, will produce a common answer that

can resolve the tip-pool claims for the entire class "in one stroke," and the commonality requirement has been satisfied.

Apparently in reliance on this Court's decision in *Franks v. MKM Oil, Inc.*, Chicago Cut also argues that Plaintiffs cannot demonstrate "that the employees of Chicago Cut were ever actually paid less than the minimum wage." Def.'s Class Cert. Resp. Br. at 9 ("Thus as in *Franks*, Plaintiffs haven't met their *Rule 23(a)* burden …. Plaintiffs do not make, nor could they ever make, an argument that the employees of Chicago Cut were ever actually paid less than the minimum wage."). In *Franks*, this Court held that a proposed class under the IMWL could not meet the predominance and numerosity requirements of Rule 23 because of "uncertainty regarding whether the[ ] employees were paid the minimum wage."[14] No. 10 CV 00013, 2012 WL 3903782, at *6 (N.D. Ill. Sept. 7, 2012).

Even if the *Franks* decision had focused on commonality, its reasoning would not be applicable in this case. *Franks* involved an allegation that employees were undercompensated when their time was improperly converted between computer systems. *Id.* at *1. This conduct would violate the IMWL if the underpayment resulted in an employee being paid less than the minimum wage. *Id.* at *6. It was therefore necessary to know the hourly wage-rate of each employee to determine if the underpayment resulted in an IMWL violation. *Id.* So even *liability* turned on an employee-by-employee inquiry. By contrast, Chicago Cut's liability under the IMWL does not depend upon the individual hourly wage-rate of each tipped employee. If

---

[14]Defendant's argument could also be construed as an objection to numerosity, as the *Franks* decision focused in part on the numerosity requirement. As discussed above, however, Plaintiffs have satisfied their burden as to numerosity.

Chicago Cut improperly operated the tip pool, it would not be eligible to receive the tip credit in its entirety, regardless of the ultimate hourly wage of each employee. *See Williams-Green*, 277 F.R.D. at 379 (noting that under the IMWL, "an employer cannot take a tip credit if it retains any portion of its employees' tips and, instead, must pay its employees the full minimum wage").

Determining whether Chicago Cut properly operated the tip pool remains the central question, and the answer to that question will resolve the claims on a classwide basis. Plaintiffs' proposed classes meet the commonality requirement of Rule 23(a)(2).

### 3. Typicality

Chicago Cut does not appear to contest that the named Plaintiffs' claims satisfy the typicality requirement for the proposed classes, *see* Def.'s Class Cert. Resp. Br. at 7-14, and Plaintiffs have adequately shown that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (internal quotation marks and citation omitted). Typicality is "closely related to the commonality inquiry." *Id.* As discussed above, the success of the class's tip-pool claims will hinge on whether Chicago Cut properly administered the tip pool. The claims of the named Plaintiffs, Starr and Phelan, depend on the identical question. Because the named Plaintiffs' claims "have the

same essential characteristics as the claims of the class at large," *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993), their claims are sufficiently "typical of the claims or defenses of the class."

### 4. Adequacy

Plaintiffs must also show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598; *see also Spano v. The Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir.2011). To be an adequate representative, the named Plaintiffs must not have "antagonistic or conflicting claims." *Retired Chicago Police Ass'n*, 7 F.3d at 598. Here, the claims of the named Plaintiffs are essentially identical to those of the proposed class members. *See* Pls.' Class Cert. Br. at 14. There are no individual defenses or other claims that would in any way impede the named Plaintiffs' ability to adequately represent the interest of the class members. Nor is there any reason to believe that Plaintiffs' counsel will fail to represent the interests of the class members. The adequacy requirement of Rule 23(a)(4) is satisfied.

### 5. Rule 23(b)(3) Requirements

In addition to meeting the four Rule 23(a) factors discussed above, Plaintiffs must also demonstrate that their proposed classes meet the requirements of Rule 23(b)(3): predominance and superiority. Although similar to commonality, "the

predominance criterion is far more demanding." *Messner*, 669 F.3d at 814 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). Under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Court thus must compare the role of common issues of law and fact with the role of individual issues, including whether the Court must examine individual transactions in adjudicating the claim. See *Messner*, 669 F.3d at 815; *see also Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 738 (7th Cir. 2011).

Chicago Cut argues that Plaintiffs cannot meet the predominance requirement under the standard imposed by *Comcast v. Behrend*. Def.'s Class Cert. Resp. Br. at 12-14. *Comcast* held that plaintiffs must "establish that damages are susceptible of measurement across the entire class." 133 S.Ct. at 1433. Noting that the named plaintiff in *Comcast* presented a damage model prepared by an expert, Chicago Cut contends that "plaintiffs have offered no expert testimony, no damage model, no explanation of how their proof of damages will comport with Rule 23(b)(3)," and therefore cannot satisfy the predominance requirement. Def.'s Class Cert. Resp. Br. at 13 (emphasis omitted). But *Comcast* does not necessarily require expert testimony or a particular damage model; it simply requires that plaintiffs show that "the damages sought are the result of the class-wide *injury* that the suit alleges." *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 799 (7th Cir. 2013) (interpreting *Comcast*). To satisfy Rule 23(b)(3), it is not necessary that "every

member of the class have identical damages," but if individual damages issues overwhelm the questions common to the class, the predominance requirement might not be satisfied. *Id.* at 801; *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013) (holding that individual damages issues that would "require 2341 separate evidentiary hearings" prevented certification).

Here, Plaintiffs have satisfactorily shown that the common questions will predominate over any individual damages issues. As discussed above, if Chicago Cut improperly operated the tip pool, it would not be eligible to receive the tip credit in its entirety. *See Williams-Green*, 277 F.R.D. at 379 (noting that under the IMWL, "an employer cannot take a tip credit if it retains any portion of its employees' tips and, instead, must pay its employees the full minimum wage"). Under the IMWL, each employee who participated in the improper tip pool would be entitled to the full minimum wage for each hour he or she worked under the tip-credit wage. *Id.* Calculation of these damages would likely not require dozens of separate live-witness hearings; the amount owed to each plaintiff would be easily calculated based on Chicago Cut's employment records. "[T]he calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program." *Espenscheid*, 705 F.3d at 773 (quoting *Johnson v. Meriter Health Sers. Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir. 2012)).

The damages for the IWPCA class would be similarly simple to calculate. Under the IWPCA, each employee would be entitled to recover the amount that he or she was underpaid plus damages of two percent of the underpayment for each

25

month it remained unpaid. 820 ILCS 115/14(a). Calculating damages would involve identifying the amount of the underpayments to the tip pool, and looking to Chicago Cut's records to determine which employees were affected by any given underpayment. Although these damages calculations would be somewhat more involved than the IMWL damages, the common question of whether the tip pool was properly operated for all tipped employees predominates over the individual damages questions.

To satisfy Rule 23(b)(3), Plaintiffs must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Chicago Cut does not appear to challenge that class treatment is superior to other methods, and the existence of a central common legal and factual issue makes class treatment particularly effective in this case. The superiority requirement is satisfied.

Plaintiffs have demonstrated that their proposed classes meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3). Their motion to certify classes for their state-law tip-pool claims under the IMWL and IWPCA is granted.

## IV. Conclusion

For the reasons discussed above, Plaintiffs' motion for summary judgment as to the tip-pooling claims (Counts 1, 2, and 3) is denied. Plaintiffs' motion to certify a class as to the state-law claims is granted. By December 29, 2014, Plaintiffs shall

provide to Chicago Cut a draft notice of class certification as required under Rule 23(c)(2)(B), as well as a notice plan. By January 9, 2015, the parties shall confer over the proposed notice and notice plan (including whether to include information on the summary-judgment decisions so far). The status hearing of December 29, 2014 is reset to January 13, 2015, at 10 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 15, 2014